1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8    TERRY JEROME CONERLY,      )    1:02-cv-05462-0WW-TAG HC

9           Petitioner,        )    REPORT AND RECOMMENDATION
                                 )    TO DISMISS PETITION FOR

10      v.                    )    WRIT OF HABEAS CORPUS
                                 )

11    GAIL LEWIS, Warden,        )    (Docs. 1 & 21)
                                 )

12           Respondent.        )

13    _____ )

14       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

15   pursuant to 28 U.S.C. § 2254.

16                        **PROCEDURAL HISTORY**

17       Petitioner is in custody of the California Department of Corrections serving a sentence of

18   fifteen years pursuant to a judgment of the Superior Court of California, County of Kern, following

19   his conviction by jury of possession of cocaine base for sale, a violation of California Health &

20   Safety Code § 11351.5.  (CT 216).  Petitioner's sentence was enhanced by true findings as to a prior

21   narcotics conviction pursuant to Health & Safety Code § 11370.2, subd. (a), a prior serious felony

22   conviction, pursuant to Penal Code § 667, subds. (c)-(e) and 1170.12, and two prior separate prison

23   terms, pursuant to Penal Code § 667.5, subd. (b).  (Id.).

24       Petitioner appealed his conviction to the California Court of Appeal for the Fifth Appellate

25   District ("5th DCA"), raising claims that the accomplice testimony provided by witnesses Darrell

26   Stubbs and Ashanti Robertson were not sufficiently corroborated, that the trial court failed to give an

27   accomplice instruction, and that the court also erred in admitting double hearsay.  (Doc. 5, Exh. A).

28   On January 14, 2002, the 5th DCA issued an unpublished decision affirming Petitioner's conviction.

1   (Doc. 5, Exh. B).   On February 14, 2002, Petitioner filed a petition for review in the California

2   Supreme Court, which was denied on March 20, 2002.  (Doc. 1, Exh. A).

3        On April 26, 2002, Petitioner filed the instant habeas corpus petition, raising the two issues

4   he had raised in the 5th DCA relating to accomplice testimony.  (Doc. 1).   On July 2, 2002,

5   Respondent filed an answer to the petition.  (Doc. 5).  On August 28, 2002, Petitioner filed his

6   traverse.  (Doc. 7).  Also on August 28, 2002, Petitioner filed a motion to stay proceedings in this

7   petition in order to exhaust additional claims in state court.  (Doc. 8).  The Court granted that request

8   on September 30, 2002.  (Doc. 9).

9        On July 23, 2003, Petitioner filed an amendment to his petition, raising three new issues that

10  he had exhausted in state court during the period when these proceedings were stayed.  (Doc. 21).

11  The Court ordered Respondent to file a supplemental answer addressing these issues, and on August

12  25, 2003, Respondent complied.  (Doc. 25).  Petitioner filed his traverse to the supplemental answer

13  on August 28, 2003.  (Doc. 26).  Respondent concedes that Petitioner has exhausted the five claims

14  in his petition as amended.  (Doc. 5, p. 2; Doc. 25, p. 2).

15                                    **FACTUAL BACKGROUND**

16       The Court hereby adopts the facts as summarized by the 5th DCA:

17  Bakersfield Police Officers Martin Heredia and Matthew Peery were on patrol in an
    area of Bakersfield known for narcotics trafficking.  The officers observed a vehicle
18  parked behind an apartment complex with at least one occupant.  Heredia recognized
    Conerly when he drove by the vehicle.
19
20  Heredia dropped Peery off around the corner to allow Peery to approach the vehicle on
    foot while Heredia approached in the patrol car.  When the officers returned, Darrell
    Stubbs was standing where the vehicle had been parked.
21
22  Peery approached Stubbs and inquired if he was on probation.  Peery searched Stubbs
    when he received an affirmative response.  A prescription medicine bottle was found
23  in Stubbs's pocket which contained three packages that appeared to be cocaine base.
    Stubbs said the cocaine base belonged to Conerly and offered additional information
    if he would not be charged.
24
25  Heredia testified he informed Stubbs that any cooperation would be reported to the
    district attorney and may result in dismissal or a reduced charge or sentence.  Stubbs
26  said Conerly had a larger quantity of cocaine base which was kept either at a stash
    house or at Conerly's residence.  Stubbs stated the stash house was rented by one of
27  Conerly's friends, and although he did not know the address, he could take Heredia to
    the stash house.

28

Heredia defined a stash house as a location over which a dealer maintained control and in which a dealer would hide narcotics, but which was not leased, rented or otherwise legally connected to the dealer.

Stubbs testified that Heredia told him that he would be set free if he led Heredia to the rest of the cocaine. Stubbs then told Heredia that the cocaine belonged to Conerly and there was several ounces of cocaine in Ashanti Robertson's apartment (the apartment or the stash house). Robertson was Conerly's girlfriend. Stubbs also testified that he said the cocaine belonged to Conerly because Stubbs wanted to protect Robertson so he could date her. He also was mad at Conerly, presumably because Conerly was Robertson's boyfriend.

Heredia had Conerly stopped by other officers and asked them to bring Conerly's keys to the apartment. Conerly's keys opened the apartment and the locked trash container used by the apartment. The apartment was searched and the officers found two plastic bags of cocaine base in the frame of the refrigerator, a small piece of plastic bag on the kitchen counter with residue which appeared to be cocaine base, and a box of plastic lunch bags and two razor blades in the kitchen. Stubbs and Conerly each possessed a pager and small amounts of cash. Plastic bags and a razor blade were discovered hidden at Conerly's residence. Heredia opined that these items were consistent with a narcotics packaging and distribution operation.

Robertson testified that she began living with Conerly and Conerly's parents a few months before Conerly was arrested. She rented the apartment five days before Conerly was arrested using the name Ushote Roberts. She claimed she rented the apartment to provide home health care services to Leval Davis, who was named in, but did not sign, the rental agreement.

Heredia testified that when he first spoke with Robertson, she claimed she rented the apartment for Conerly and herself.

No one lived at the apartment. According to Robertson, Conerly was at the apartment only one time when Robertson showed him where she was going to work. Robertson testified she used the razor blade found in the kitchen of the apartment to cut up narcotics that she purchased for her own use. The cocaine base located in the frame of the refrigerator belonged to Stubbs. Robertson owned the paraphernalia found at Conerly's residence.

Robertson testified she told Heredia that she would be moving into the apartment with a friend. She also told Heredia when he first asked her about the cocaine base that she did not know anything about it because she was scared. A few weeks later, Robertson told Heredia that the cocaine base was hers.

Robertson moved in with her parents a few weeks after Conerly was arrested. Robertson's mother and father testified that on separate occasions Robertson stated she told the police that the cocaine base was hers because she loved Conerly and did not want him to go to jail. Robertson denied telling her parents that she loved Conerly and denied that she said the cocaine base was hers in order to keep Conerly out of jail.

Charles Holcombe rented the apartment to Robertson. Robertson paid the rent and the security deposit. A few days later, Robertson called and told Holcombe's wife that she no longer wanted the apartment because a man had been arrested in the alley behind the apartment.

(Doc. 5, Exh. B., pp. 2-4).

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.   28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1069, 118 S.Ct. 586 (1998); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)), overruled on other grounds, Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and therefore is governed by the AEDPA.

**II.  Legal Standard of Review**

Under the AEDPA, a petition for writ of habeas corpus will not be granted unless the adjudication of a state prisoner's claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003).

The first prong of review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1), and pertains to questions of law and to mixed questions of law and fact. Williams, 529 U.S. at 407-09; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  In addressing this portion of the analysis, the Supreme Court explains that:

///

[A] state court decision is "contrary to" our clearly established [Supreme Court] precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or "if the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [Supreme Court] precedent.

Lockyer, 538 U.S. at 73 (citations omitted).  The Supreme Court also explains that a state court decision involves an "unreasonable application" of Supreme Court precedent if:

[T]he state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case.
. . . .

The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.

Lockyer, 538 U.S. at 75.

The second prong of review involves the "unreasonable determination" clause of 28 U.S.C. § 2254 (d)(2), and pertains to decisions based on factual determinations.  Davis, 384 F.3d 637, citing Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029 (2003). A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" when it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500, overruled on other grounds, Lindh, 521 U.S. 320.  Under the AEDPA, any factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence.  Miller-El, 537 U.S. 322; Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).

To determine whether habeas relief is warranted, the federal court looks to the "last reasoned decision of [a] state court as the basis of the state court's judgment." Powell v. Galaza, 328 F. 3d 558, 563 (9th Cir. 2003) (quoting Franklin v. Johnson, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)). When a state court provides no reasoning for its decision, the federal court independently reviews the record to determine whether under the AEDPA,  the state court properly denied habeas relief, focusing on whether the state court's resolution of the petitioner's claim was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."); see also  Greene v.

///

1  Lambert, 288 F. 3d 1081, 1088-1089 (9th Cir. 2002); Delgado v. Lewis, 223 F.3d 976, 981-982

2  (9th Cir. 2002).

3      A.      **Habeas Review of State Court Decisions on Questions of Law**

4        Challenges to purely legal questions resolved by the state court are reviewed under 28 U.S.C.

5  § 2254(d)(1).  "[T]he question on review is (a) whether the state court's decision contradicts a

6  holding of the United States Supreme Court or reaches a different result on a set of facts materially

7  indistinguishable from those at issue in a decision of the Supreme Court; or (b) whether the state

8  court, after identifying the correct governing Supreme Court holding, then unreasonably applied that

9  principle to the facts of the prisoner's case."  Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir.

10  2004).

11        The AEDPA denies habeas relief on any claim adjudicated on the merits in state court unless

12  the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable

13  application of, clearly established Federal law, as determined by the United States Supreme Court.

14  28 U.S.C. § 2254(d)(1).  Section 2254(d)(1)'s reference to "clearly established Federal law" means

15  the holdings of the Supreme Court's decisions at the time of the state court's decision. Lockyer, 538

16  U.S. at 412.  "A state court's decision is 'contrary to' clearly established Supreme Court precedent if

17  the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if

18  the state court confronts a set of facts materially indistinguishable from those at issue in a decision of

19  the Supreme Court and, nevertheless, arrives at a result different from its precedent." Lambert v.

20  Blodgett, 393 F.3d at 974 (citations omitted).  "The 'unreasonable application' standard captures

21  those cases in which 'the state court identifies the correct governing legal principle from [the

22  Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

23  case.'" Id., quoting Williams, 529 U.S. at 409.  The Supreme Court instructs that in applying the

24  "unreasonable application" standard, a federal habeas court should consider whether the state court's

25  application of clearly established federal law was objectively unreasonable.  Williams, 529 U.S. at

26  409.  Thus, a habeas writ cannot issue if the federal habeas court concludes that the state court

27  decision applied clearly established federal law incorrectly;  the application  must also have been

28  objectively unreasonable. Id.; Lockyer, 538 U.S. at 75.

**B.**     **Habeas Review of State Court Decisions on Questions of Fact**

Federal habeas challenges to purely factual questions determined by the state courts are reviewed under 28 U.S.C. §§ 2254(d)(2). "[T]he question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record. . . .[F]act-based challenges founded on evidence raised for the first time in federal court are reviewed under § 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings." Lambert v. Blodgett, 393 F.3d at 978. Thus, state court factual determinations are presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). In addition, state court decisions which are adjudicated on the merits and based on factual determinations will not be overturned on habeas review under the AEDPA unless the decisions were objectively unreasonable in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2); Lockyer, 538 U.S. at 75.

The Ninth Circuit Court of Appeals recently interpreted §§ 2254(d)(2) and 2254(e)(1)[1], and held that both provisions apply to challenges supported by separate categories of evidence. Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); Lambert v. Blodgett, 393 F.3d at 971-973. In Taylor, the Ninth Circuit held that the "unreasonable determination" clause of § 2254(d)(2) applies to intrinsic review of a state court's process, i.e., circumstances in which a petitioner challenges the

---

[1]  §§ 2254(d)(2) and 2254(e)(1) address whether, and to what extent, a federal district court is bound by state court findings on any of the dispositive factual questions presented in a federal habeas petition. These statutes provide as follows:

   (d) An application for a writ of habeas corpus on behalf of a person in
   custody pursuant to the judgment of a State court shall not be granted
   with respect to any claim that was adjudicated on the merits in State court
   proceedings unless the adjudication of the claim --
   . . .

   (2) resulted in a decision that was based on an unreasonable determination
   of the facts in light of the evidence presented in the State court proceeding.

   (e)(1) In a proceeding instituted by an application for a writ of habeas corpus
   by a person in custody pursuant to the judgement of a State court, a
   determination of a factual issue made by a State court shall be presumed to
   be correct. The applicant shall have the burden of rebutting the presumption
   by clear and convincing evidence.

state court's findings based entirely on the state court record. Id. at 999-1000.  In Taylor, the Ninth

Circuit also held that § 2254(e)(1) applies to challenges based on extrinsic evidence, i.e., evidence

presented for the first time in federal court. Id.  As explained in Taylor: "[I]t is not enough that we

would reverse in similar circumstances if this were an appeal from a district court decision; rather,

we must be convinced that an appellate panel, applying the normal standards of appellate review,

could not reasonably conclude that the finding is supported by the record." Id. (citations omitted).

Likewise, mere doubt as to the adequacy of the state court's findings of fact is insufficient: "we must

be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is

pointed out would be unreasonable in holding that the state court's fact-finding process was

adequate. Id.; Lambert v. Blodgett, 393 F.3d at 972.

When a habeas petition presents no intrinsic challenge to a state court's factual

determinations, or if it does, the factual determinations survive an intrinsic review, the factual

determinations are then "dressed in a presumption of correctness, which [ ] helps steel them against

any challenge based on extrinsic evidence." Id.  Under Section 2254(e)(1), state court factual

findings "may be over-turned based on new evidence presented for the first time in federal court only

if such new evidence amounts to clear and convincing proof that the state-court finding is in error."

Id.(citations omitted); Lambert v. Blodgett, 393 F.3d at 972.

**C.** **Review of State Court Decisions on Mixed Questions of Law and Fact**

A mixed question of law and fact is one that requires the application of legal principles to

historical and other facts.  State court decisions which apply law to facts are governed by

§ 2254(d)(1).  However, the factual finding underlying a state court's decision on a mixed question

of law and fact are accorded a presumption of correctness.  Lambert v. Blodgett, 393 F.3d at 976

(citing Jeffries, 114 F.3d at 1498 (AEDPA "further restricts the scope of federal review of mixed

questions of law and fact.  De novo review is no longer appropriate; deference to the state court

factual findings is."), citing Rupe v. Wood, 93 F.3d 1434, 1444 (9th Cir. 1997) (voluntariness of

confession is a legal question not entitled to presumption of correctness but the state court's finding

that no threats or promises were made was "essentially a factual conclusion, which is entitled to a

presumption of correctness").

Accordingly, federal habeas review of a state court decision based on a mixed question of law and fact requires the federal court to "first separate the legal conclusions from the factual determinations that underlie it.  Fact-finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion as to the ultimate legal issue–or the application of federal law to the factual findings–is reviewed per § 2254 (d)(1) in order to ascertain whether the decision is 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent." Lambert v. Blodgett, 393 F.3d at 977-978.

**III.  Review of Petitioner's Claims**

The instant petition alleges the following grounds for relief:

Ground 1.   The trial court's failure to give an accomplice instruction or require sufficient corroborating evidence of the accomplices' testimony diminished the burden of proof required to convict Petitioner and thereby violated his due process rights.

Ground 2.   Petitioner's due process and fair trial rights were violated by the trial court's failure to give an accomplice instruction where the corroborating evidence was insufficient and where the trial court specifically instructed the jury that it need not consider the sufficiency or weight of the corroborating evidence.

Ground 3.   Petitioner's due process rights were violated by prosecutorial misconduct in which the prosecutor presented testimony from a witness who was mentally incompetent to testify.

Ground 4.   Ineffective assistance of trial counsel in failing to investigate and challenge the competency and sanity of a witness.

Ground 5.   The trial court failed to follow state law in dealing with an incompetent witness and taking steps to restore the witness to competency.

Each of Petitioner's claims will be addressed below.  Petitioner's Ground Five claim will be addressed out of sequence, to facilitate a more logical progression and review of the issues.

**Ground One:**     **The Trial Court's Failure To Give An Accomplice Instruction Or Required Sufficient Corroborating Evidence Of The Accomplices' Testimony Diminished The Burden Of Proof Required To Convict Petitioner And Thereby Violated His Due Process Rights.**

**Ground Two:**     **Petitioner's Due Process And Fair Trial Rights Were Violated By The Trial Court's Failure To Give An Accomplice Instruction Where The Corroborating Evidence Was Insufficient And Where the Trial Court Specifically Instructed The Jury That It Need Not Consider The Sufficiency Or Weight Of The Corroborating Evidence.**

Petitioner contends that the trial testimony of two accomplices, Robertson and Stubbs, was not supported by sufficient corroborating evidence under California Penal Code § 1111,[2] and that the trial court, sua sponte, should have instructed the jury regarding how to weigh accomplice testimony.[3]  (Doc. 1, p. 5).[4]  Respondent contends that these two arguments fail to raise a federal question, and, in any event, that they fail on their merits.  The Court agrees.

The basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added).  See also Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . ."  Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827 (1973).  Federal habeas review is limited to claims that are set out as described above.

Grounds One and Two are deficient because they fail to allege a violation of the United States Constitution or argue that Petitioner is in custody in violation of the United States Constitution.  A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S.Ct. 475 (1991).  As the Supreme Court has stated, "[I]t is not the province of a federal habeas

---

[2]California Penal Code § 1111 provides in pertinent part as follows: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."  CALJIC No. 3.12 is the jury instruction based upon § 1111.  The record contains no request by either side to instruct the jury with CALJIC No. 3.12, and the trial court did not, sua sponte, give the instruction.

[3]CALJIC No. 3.18 provides as follows: "To the extent that an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution.  This does not mean, however, that you may arbitrarily disregard that testimony.  You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in this case."

[4] The Court is unable to distinguish between Grounds One and Two, each appearing to challenge *both* the trial court's failure to give an accomplice instruction *and* its failure to require sufficient evidence of corroboration.  Accordingly, the two claims will be discussed together.

1   court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 68;

2   Gilmore v. Taylor, 508 U.S. 333, 348-349, 113 S.Ct. 2112 (1993).

3       To obtain federal collateral relief for errors in the jury charge, Petitioner must show that the

4   ailing instruction by itself so infected the entire trial that the resulting conviction violates due

5   process. See Estelle, 502 U.S. at 72; Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).

6   Additionally, the instruction may not be judged in artificial isolation, but must be considered in the

7   context of the instructions as a whole and the trial record. Id.  The Court must evaluate jury

8   instructions in the context of the overall charge to the jury as a component of the entire trial process.

9   See United States v. Frady, 456 U.S. 152, 169, 102 S.Ct. 1584 (1982), citing Henderson v. Kibbe,

10  431 U.S. 145, 154, 97 S.Ct. 1730 (1977).  Furthermore, even if it is determined that the instruction

11  violated Petitioner's right to due process, Petitioner can only obtain relief if the unconstitutional

12  instruction had a substantial influence on the conviction and thereby resulted in actual prejudice

13  under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993)(whether the error had a

14  substantial and injurious effect or influence in determining the jury's verdict.).  See Hanna v.

15  Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

16      The burden of demonstrating that an erroneous instruction was so prejudicial that it will

17  support a collateral attack on the constitutional validity of a state court's judgment is even greater

18  than the showing required to establish plain error on direct appeal. Id.  Moreover, a petitioner whose

19  claim, as here, involves the *omission* of an instruction "bears an especially heavy burden," because

20  an omission is less likely to be prejudicial than a misstatement of the law.  Henderson v. Kibbe,

21  431 U.S. at 155.

22      In addition to the general principle that a state jury instruction challenge does not raise a

23  federal habeas issue, there is the specific principle that corroboration of accomplice testimony is not

24  constitutionally mandated nor does the failure to give cautionary accomplice instructions implicate

25  the United States Constitution.  See United States v. Augenblick, 393 U.S. 348, 352, 89 S.Ct. 528

26  (1969)("When we look at the requirements of procedural due process, the use of accomplice

27  testimony is not catalogues with constitutional restrictions.").  It is well-settled that the

28  "uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible

1  or insubstantial on its face." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993);

2  United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1986).   "If uncorroborated accomplice testimony

3  is sufficient to support a conviction under the Constitution, there can be no constitutional right to

4  instruct the jury that it must find corroboration for an accomplice's testimony." Takacs v. Engle,

5  768 F.2d 122, 127 (6th Cir. 1985).

6         Thus, California's requirements that there be some corroboration of an accomplice's

7  testimony and that the jury be instructed that it should treat accomplice testimony with caution,

8  impose a higher standard than does the federal Constitution.   Accordingly, any failure to adhere to

9  California's stricter requirements will not implicate a federal right unless the uncorroborated

10  accomplice testimony is "incredible or insubstantial on its face," Necoechea, 986 F.2d at 1282, or

11  unless the alleged violation denied Petitioner his due process right to fundamental fairness. Laboa v.

12  Calderon, 224 F.3d 972, 979 (9th Cir. 2000)(citing Estelle, 502 U.S. at 72-73.)  A state law violates a

13  defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state

14  law entitlement. Id. (citing Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S.Ct. 2227 (1980).)

15         As discussed below, the accomplice testimony was neither inherently incredible nor

16  insubstantial on its face, and thus, no federal rights are implicated and Petitioner was not arbitrarily

17  deprived of a state law entitlement.   However, to the extent that the trial court's failure to instruct

18  the jury sua sponte on the issue of corroboration pursuant to California law implicates a federal right,

19  the issue is controlled by the deferential standards of the AEDPA.   Under that standard, the Court

20  concludes that, even if the errors were cognizable under federal law, they were harmless for the

21  reasons articulated by the state courts.

22         Petitioner's claim was first presented on direct appeal to the 5th DCA.  The 5th DCA denied

23  the claim on January 17, 2002, in a reasoned opinion.  (Doc. 5, Exh. B.)  The claim was then

24  presented to the California Supreme Court in a petition for review on February 14, 2002; however,

25  the petition was summarily denied on March 20, 2002.  (Doc. 1, Exh.  A).  The California Supreme

26  Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied

27  the claims presented for the same reasons stated in the opinion of the 5th DCA. Ylst v. Nunnemaker,

28  501 U.S. 797, 803, 111 S.Ct. 2590 (1991).

In rejecting Petitioner's claim, the 5th DCA first determined that the trial court had erred in failing to give a sua sponte instruction to the jury on accomplice testimony, reasoning as follows:

> Section 1111 "defines an accomplice as 'one who is liable to prosecution for the identical offense charged against the defendant on trial...' [Citations.] Whether a person is an accomplice within the meaning of section 1111 presents a factual question for the jury 'unless the evidence permits only a single inference.' [Citation.] Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only when the facts regarding the witness's criminal culpability are 'clear and undisputed'. [Citations.]"  (People v. Williams (1997) 16 Cal.4th 654, 679.)

> "To be an accomplice, a witness must have ' " 'guilty knowledge and intent with regard to the commission of the crime....' " ' [Citation.] The definition of an accomplice 'encompasses all principals to the crime including aiders and abettors and coconspirators.' [Citation.] To be an accomplice, one must act ' "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging, or facilitating commission of, the offense." ' [Citations.]" (People v. DeJesus (1995) 38 Cal.App.4th 1, 23.)  The fact that the witness was prosecuted for the same offense as the defendant by itself does not establish that the witness is an accomplice.  (People v. Gordon (1973) 10 Cal.3d 460, 467.)

> We do not agree with Conerly that Stubbs and Robertson were accomplices as a matter of law.  The evidence was sufficiently ambiguous that more than a single inference could be drawn.  Stubbs could have been merely a user and not part of the distribution chain.  Robertson may have acted on behalf of Conerly, with the hope that they would move into the apartment together.

> On the other hand, we agree with Conerly that there was sufficient evidence to require accomplice instructions.  Stubbs was arrested with three packets of cocaine base in the same spot that Conerly had been parked moments before.  Stubbs immediately professed knowledge of the location of a greater quantity of cocaine base.  Stubbs was initially charged with possession for sale along with Conerly, but was apparently confined in a state mental hospital at the time of trial, thus prohibiting prosecution. Stubbs testified only after the trial court granted him use immunity.  The jury could infer from these facts that Stubbs was actively involved in the distribution of cocaine.

> Similarly, Robertson was charged with possession for sale with Conerly in the amended information and testified only after the trial court granted her use immunity. Robertson lived with Conerly and rented the apartment described by Stubbs as the stash house using a false name.  Robertson made numerous inconsistent statements including a claim that the cocaine base and paraphernalia belonged to her.  The jury could infer that she also was actively involved in the sale and distribution of cocaine base.

> "When there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices.... [Citations.]" (People v. Frye (1998) 18 Cal.4th 894, 965-966).  There was sufficient evidence that Stubbs and Robertson were accomplices. Therefore, the trial court erred when it failed to instruct the jury that if it determined that Stubbs and Robertson were accomplices, corroboration was required and their testimony should be viewed with distrust.  (CALJIC Nos. 3.10, 3.11, & 3.18.) .

(Doc. 5, Exh. B, pp. 6-7).

The 5th DCA went on to analyze the impact of the instructional error, ultimately concluding that it was harmless:

> A conviction cannot be based only on accomplice testimony. (§ 1111.) There must be sufficient corroborating evidence that "shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Ibid.)
>
> A conviction will not be reversed for failure to instruct on the principles governing the law of accomplices if a review of the entire record reveals sufficient evidence of corroboration. (People v. Frye, supra, 18 Cal.4th at p. 966.) If there is not any corroborating evidence, reversal is required because (1) section 1111 was violated, and (2) the failure to instruct on the law of accomplices would not be harmless. Therefore, we turn to the question of corroboration.
>
> Corroborating evidence " 'must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.'... [Citation.]" (People v. Bunyard (1988) 45 Cal.3d 1189, 1206.) "The corroborating evidence may be entirely circumstantial. [Citations.] The corroborating evidence may be ' "slight and entitled to little consideration when standing alone." ' [Citations.] Only a portion of the accomplice's testimony need be corroborated, and the corroborative evidence need not establish every element of the offense charged. [Citation.] All that is required is that the evidence ' " " "connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [accomplice] is telling the truth." " " ' [Citation.]" (People v. DeJesus, supra, 38 Cal.App.4th at p. 25.) Another accomplice cannot provide corroborating evidence. (People v. Tewksbury, supra, 15 Cal.3d at p. 958.)
>
> The evidence connecting Conerly to the cocaine base in the apartment was not overwhelming. Conerly was seen in the parking lot where Stubbs was arrested immediately prior to Stubbs arrest, an area known for drug sales. Conerly possessed a pager and two $5 bills, items identified with narcotic possession for sale. Conerly possessed keys to the apartment and to the garbage container for the apartment. Conerly told Robertson's mother that he was a drug dealer. The apartment, in which no one lived, was rented by Conerly's girlfriend (Robertson) using a false name. Drug paraphernalia was found both in the apartment and at Conerly's residence. While this evidence is not overwhelming, it provides corroboration sufficient to comply with section 1111 and render the error in failing to give accomplice instructions harmless.
>
> Our conclusion is consistent with the purpose of section 1111, to compel the jury to view accomplice testimony with distrust and suspicion. (People v. Miranda (1987) 44 Cal.3d 57, 101, overruled on another ground in People v. Marshall (1990) 50 Cal.3d 907, 933, fn. 4.) Both Stubbs and Robertson testified at trial in a manner inconsistent with their statements to Heredia. Robertson changed her story at least twice. Their testimony at trial, if believed by the jury, would have exonerated Conerly. As both the prosecutor and defense attorney pointed out in closing argument, the issue was which of the stories should be believed. Accordingly, the jury knew that the testimony of Stubbs and Robertson should be viewed with distrust.
>
> The Supreme Court has rejected Conerly's final argument that the failure to give accomplice instructions diminishes the prosecution's standard of proof to something less than beyond a reasonable doubt. (People v. Frye, supra, 18 Cal.4th at pp. 966-969.) As explained in Frye, the error in this argument is the incorrect assumption that accomplice testimony impacts the prosecution's burden of proof on the elements of

1    the crime.  (Id. at p. 968.)  To the extent Conerly is suggesting we disagree with Frye,
     we do not have the authority to do so.  (Auto Equity Sales, Inc. v. Superior Court
2    (1962) 57 Cal.2d 450, 455.)

3    (Doc. 5, Exh. B, pp. 7-9).

4         The analysis of the 5th DCA is sound, and therefore, applying federal harmless error

5    standards, the Court concludes that any error in failing to instruct the jury regarding corroboration of

6    accomplice testimony and how to weigh such testimony was harmless under Brecht.  Because the

7    instant case is on collateral review, Respondent need only show that the error did not have a

8    "substantial and injurious effect or influence in determining the jury's verdict," a lower standard than

9    the harmless error standard applicable on direct review.  Brecht, 507 U.S. at 623 (quoting Kotteakos

10   v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239 (1946); Fisher v. Roe, 263 F.3d 906, 917 (9th Cir.

11   2001), overruled in part on other grounds, Payton v. Woodford, 346 F.3d 1204, 1218 n.18 (9th Cir.

12   2003).

13        As discussed by the 5th DCA, even though it could be argued that Stubbs and Robertson

14   were accomplices and therefore that the trial court should have instructed the jury on accomplice

15   testimony pursuant to applicable California law, there was, contrary to Petitioner's assertions,

16   sufficient corroborating evidence presented to satisfy the purposes of California Penal Code § 1111,

17   thereby rendering harmless any error by the trial court in failing to require sufficient corroboration or

18   instruct the jury on CALJIC No. 3.12 (sufficiency of corroborating evidence). (Doc. 5, Exh. B, p. 9).

19   In addition to the corroborating evidence catalogued by the 5th DCA in its opinion, the Court notes

20   that Petitioner admitted to the police that he had been at the Quincy Street apartment on the day of

21   his arrest (RT 282-285, 288-290); Stubbs led police to Petitioner's residence (RT 37-38, 117, 220,

22   237-239); and, in addition to the paraphernalia recovered at both Petitioner's residence and the stash

23   house, police also recovered usable amounts of cocaine base from the Quincy street apartment.

24   (RT 76-79, 85, 87, 96, 243-245, 249, 278-280).  Together, this evidence, while not overwhelming, is

25   certainly sufficient to satisfy any concerns that the conviction was obtained by *uncorroborated*

26   accomplice testimony.

27        Moreover, the state court gave Petitioner's counsel every opportunity to cross-examine the

28   accomplices, to challenge their testimony at trial, and to argue any contradictions or insufficiencies

1 in that testimony to the jury. Counsel did this, pointing out to the jury that both Robertson and

2 Stubbs had given conflicting accounts at various stages in the proceedings, thus raising questions not

3 only about the witnesses's credibility, but also as to which version of events should be believed by

4 the jury.  The Court concludes that the quantum of evidence corroborating the accomplices'

5 statements was sufficient to render any purported errors harmless.

6        Also, the failure to give CALJIC No. 3.18, advising jurors to view accomplice testimony with

7 caution, is harmless under <u>Brecht</u>.   If given, such an instruction could only have hurt the defense

8 since the trial testimony of both accomplices supported Petitioner's innocence and contradicted

9 earlier inculpatory statements they had given to police.  Instructing the jury to view Stubbs's and

10 Robertson's trial testimony with caution, therefore, would only have weakened their credibility in the

11 eyes of the jurors and weakened the defense's case.

12        Given the substantial evidence of corroboration of the accomplices' testimony as to

13 Petitioner's guilt, an instruction on corroboration could not have reasonably had an effect on the

14 jury's deliberations, was not actually prejudicial, and was therefore harmless.  <u>Brecht</u>, 507 U.S. at

15 622- 623, 638.  Nor would the trial court's failure to instruct the jury to view the accomplices'

16 testimony with caution have had an affect on the outcome of the trial.  Hence, Grounds One and Two

17 must be denied.  <u>Cf.</u> <u>United States v. Johnson</u>, 516 F.2d 209, 213 (8th Cir. 1975)("Where the

18 evidence is unclear on the question of the status of witnesses as accomplices, it is not reversible error

19 to refuse to name such witnesses as accomplices."); <u>United States v. Callis</u>, 390 F.2d 606, 607-608

20 (6th Cir. 1968)("While the court did not charge that the witnesses in question were accomplices

21 because it was not clear to it that they were...there was no reversible error.").

22

23        **Ground Five:**          **The Trial Court Failed To Follow California Law In Dealing With**

**An Incompetent Witness And Taking Steps To Restore The**

24                                                **Witness To Competency.**[5]

25        Citing California Penal Code § 1370(a)(1)-(2), § 1370.01(a)(1)-(2), § 1370.1(a)(1)-(2), and

26 §§ 1600-1620, Petitioner claims that the trial court violated state law by permitting an incompetent

27 _____

28      [5]Because the resolution of Grounds Three and Four are contingent in large part upon the resolution of Ground Five, the Court will address Ground Five first.

witness, Stubbs, to testify for the prosecution, thereby permitting Petitioner to be convicted on the testimony of an incompetent witness.  (Doc. 21, pp. 2-3).  Respondent contends both that Petitioner has not raised a federal issue and that the issue fails on its merits.  The Court agrees with Respondent.

First, the issue appears to be entirely one of state law that is not entitled to habeas relief.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 68; Gilmore, 508 U.S. at 348-349.   Therefore, the state court's decisions regarding how it applies or does not apply California laws regarding the competency of witnesses is not a basis for habeas relief.  Newton v. Kemna, 354 F.3d 776, 783 (8th Cir. 2004); see e.g., Schlette v. California, 284 F.2d 827, 834-835 (9th Cir. 1960)(competency of witness generally a matter of state law).  Moreover, even  "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."  Sawyer v. Smith, 497 U.S. 227, 239, 110 S. Ct. 2822 (1990), quoting, Dugger v. Adams, 489 U.S. 401, 409, 109 S.Ct. 1211 (1989).  Here, although Petitioner does cite one federal case in support of his position, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836 (1966)[6], (Doc. 21, p. 3), that case is inapposite because it dealt with the competency of a criminal *defendant to stand trial*, not with the competency of a California *witness to testify*.  Petitioner cites no other federal basis for his claim, and the Court can find none.

Additionally, as Respondent correctly points out, no "clearly established federal law" gives Petitioner a constitutional right imposing a duty on state trial judges to determine the competency of a prosecution witness in the absence of a challenge by the defense.  See Teague v. Lane, 489 U.S. 288, 301, 109 S. Ct. 1060 (1989)(habeas relief granted only if right asserted was clearly established at time defendant's conviction became final).  Where state or federal law provides that a competency determination must be made, failure to conduct an appropriate hearing implicates a defendant's due process rights.  Walters v. McCormick, 122 F.3d 1172 (9th Cir. 1997).  After a defendant raises a colorable objection to the competency of a witness, the trial court must perform "a reasonable

///

---

[6]Petitioner incorrectly referred to this case as "Patton v. Robinson". (Doc. 21, p. 3).

exploration of all the facts and circumstances" concerning competency.  <u>Sinclair v. Wainwright</u>, 814 F.2d 1516, 1522 (11th Cir. 1987).

Here, defense counsel raised no objection to Stubbs' competency to testify, undoubtedly because Stubbs' testimony was helpful to the defense by recanting his prior inculpatory statements to police.  Since no objection was raised at trial, the trial court had no obligation to inquire further regarding Stubbs' purported incompetency to testify.[7]  Accordingly, since Petitioner's claim is premised entirely on California law, it does not raise a federal question and, therefore, is not cognizable in these habeas proceedings.

Finally, even if the issue were properly framed as a federal one, it is without merit.   The record is devoid of any suggestion that Stubbs was in fact incompetent to testify or that the trial court had any duty, absent an objection from defense counsel, to initiate competency proceedings against a proffered witness.  Contrary to Petitioner's assertions, the presumption in California is that a witness is competent to testify.  California's Evidence Code provides that, except as provided by statute, "every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter."  Cal. Evid. Code, § 700.  The only grounds for incompetency of a witness are when the witness is "[i]ncapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him," or when the witness is "[i]ncapable of understanding the duty of a witness to tell the truth."  Cal. Evid. Code, § 701(a).

A review of Stubbs' testimony indicates to this Court that he understood the questions being asked of him and his responses were appropriate.  Nothing in the record suggests that Stubbs was incapable either of expressing himself or of understanding the witness's oath to tell the truth.  Moreover, Stubbs testimony supported the defense by contradicting Stubbs' earlier statements to police that implicated Petitioner.  (RT 33-38).[8]  At trial, Stubbs indicated that when he was arrested

---

[7]The sections of California's Penal Code on which Petitioner relies for this argument refer to the competency of a criminal defendant, not to the competency of witnesses.

[8]Specifically, Stubbs testified that on the night of his arrest, he falsely told officers that the drugs belonged to Petitioner. (RT 33-34).  Stubbs denied knowing that Petitioner was in the area that evening or that Petitioner dealt rock cocaine in that neighborhood.  (RT 33-34).  Stubbs maintained he implicated

he had implicated Petitioner to police because he was angry with Petitioner and that, if Petitioner was "out of the way," Stubbs would be able to have Robertson as his girlfriend.  (RT 41).  All of this makes clear that Stubbs was capable of expressing himself and also of understanding the import of the witness's oath to tell the truth.[9]  Additionally, Robertson testified, under cross-examination by defense counsel, that Stubbs had "mental problems" and was "not all there."  (RT 157).  Subsequently, Petitioner's attorney argued to the jury that Stubbs' trial testimony was true and his earlier statements were false.  (RT 347; 349-351; 354; 356-359).

From the foregoing, it is apparent that the defense's trial strategy required Petitioner's counsel to walk a fine line by attempting to emphasize to the jury the credibility of Stubbs' trial testimony while, at the same time, diminishing the credibility of Stubbs' pre-trial statements as those of someone with mental problems.  The Court will not speculate on the wisdom of this trial strategy except to note that it would certainly explain why defense counsel raised no objection to Stubbs' competence at trial nor otherwise sought to impeach the version of events Stubbs' recounted from the witness stand.[10]  Hence, Petitioner has failed to establish that the trial court violated California law by refusing, sua sponte, and without objection from defense counsel, to conduct a competency examination of Stubbs before permitting him to testify.  Since the trial court did not deprive Petitioner of any right under California law, it is patent that this same conduct could not have violated a federal right.

---

Petitioner because police told Stubbs they could "get [him] off" if he told them where the rest of the drugs were located.  (RT 34).  Stubbs also testified that he told police the "stash house" was operated by Petitioner because he had discovered that Robertson, whom Stubbs was trying to make his own girlfriend, had been seeing Petitioner and that had infuriated him.  (RT 35-36).

[9]Although Stubbs' testimony is replete with examples of his capacity to understand and to express himself, one passage illustrates this fact clearly.  During re-direct examination, Stubbs insisted that he and Robertson were "trying to get to [the] level" of boyfriend and girlfriend.  (RT 42).  The prosecutor asked Stubbs how many times Robertson had visited him since Petitioner's arrest and Stubbs admitted that she had not visited him at all.  (RT 42).  The prosecutor then confronted Stubbs with documentary evidence that Robertson had visited Petitioner in jail frequently since his arrest.  (RT 43-44).  When asked again whose girlfriend Robertson was, Stubbs stated, "I don't know whose girlfriend she was apparently."  (RT 44).  Stubbs' ability to comprehend the significance of the prosecutor's surprise evidence and to articulate an appropriate response indicates to the Court that he was in no way incompetent to testify under California law.

[10]To the contrary, it was the prosecutor who argued to the jury that Stubbs' trial testimony was false and that his pre-trial statements to police were true.  (RT 313-314; 316-317; 319-323; 326; 329; 332-333; 339-340; 366; 368-369; 371; 384-387; 390-391; 395-396).

For the foregoing reasons, the state court's rejection of Petitioner's habeas corpus petition on this ground was neither contrary to nor an unreasonable application of clearly established federal law.  Accordingly, Ground Five should be denied.

**Ground Three:**   **Petitioner's Due Process Rights Were Violated By Prosecutorial Misconduct In Which The Prosecutor Presented Testimony From A Witness Who Was Mentally Incompetent To Testify.**

Next, Petitioner contends that the prosecution engaged in misconduct by proffering a witness, i.e., Stubbs, who was mentally incompetent.  (Doc. 21, p. 2).  This contention is without merit.

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102 (1987) (quoting United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably would have been different.

For the reasons set forth in Ground Five, Petitioner has failed to establish that his constitutional rights were violated by the prosecution's presentation of Stubbs as a witness. Petitioner has not established that the trial court violated any state laws in permitting the prosecution to call Stubbs as a witness, there was no objection from defense counsel that would trigger any duty by the trial court to interrupt the proceedings to conduct a competency examination of the witness, and, indeed, defense counsel relied on Stubbs' trial testimony to support the defense theory of the case.  Hence, no error of constitutional dimensions occurred, and, even if one had occurred, it would necessarily have been harmless for the reasons set forth above.  Brecht, 507 U.S. at 622- 623, 638.

///

///

1    **Ground Four:          Ineffective Assistance Of Trial Counsel In Failing To Investigate**
                             **And Challenge The Competency And Sanity Of A Witness.**
2

3          Finally, Petitioner asserts that he was deprived of the effective assistance of counsel when his

4    attorney failed "to investigate and challenge the competence and sanity" of the witness, Stubbs, at

5    trial.  (Doc. 21, p. 2).  This contention is without merit.

6          In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court

7    must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984);

8    Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

9    performance was deficient, requiring a showing that counsel made errors so serious that he or she

10   was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at

11   687.  The petitioner must show that counsel's representation fell below an objective standard of

12   reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts or omissions that

13   were not the result of reasonable professional judgment considering the circumstances.  Id.; United

14   States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's

15   performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls

16   within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v.

17   Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

18         Second, petitioner must show that counsel's errors were so egregious as to deprive him of a

19   fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The Court must also evaluate

20   whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.

21   Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir.

22   1994).  To set aside a conviction or sentence solely because the outcome would have been different,

23   but for counsel's error, may grant the petitioner a windfall to which the law does not entitle him.

24   Lockhart, 506 U.S. at 369-370.   Thus, if the Court finds that counsel's performance fell below an

25   objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of

26   the proceeding would have been different, the Court must then ask whether, despite the errors and

27   prejudice, the trial was fundamentally fair and reliable.  Id.

28   ///

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. <u>Strickland</u>, 466 U.S. at 697. Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Here, it is obvious that Petitioner's counsel did not challenge Stubbs' testimony because it was beneficial, not harmful, to Petitioner's defense. Thus, any error in counsel's failure to impugn Stubbs' credibility was, by definition, not prejudicial. Hence, the Court need not evaluate whether counsel's conduct fell below an objective standard of reasonableness. <u>Id.</u>

Nevertheless, the Court will address the issue, and concludes that counsel's conduct was not deficient. As discussed previously, Stubbs' exculpatory trial testimony contradicted his earlier inculpatory statements to police. A defense counsel who refuses to challenge the competency of a witness testifying to his client's innocence is hardly being ineffective, nor does his conduct fall below any objective standard of reasonableness for attorneys. To the contrary, had defense counsel chosen to attack Stubbs' competency as a witness at trial, as Petitioner contends now he should have, counsel would likely have rendered ineffective assistance. For the reasons set forth above, counsel's conduct in refusing to attack Stubbs' competency did not fall below an objective standard of reasonableness and was not prejudicial to Petitioner. Accordingly, Ground Four should be denied.

### RECOMMENDATION

Accordingly, for the reasons set forth above, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus (Docs. 1 and 21), be DENIED with prejudice.

This Report and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Replies to the Objections shall be served and filed within ten <u>court</u> days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to

1    28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified

2    time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

3    (9th Cir. 1991).

4

5    <u>IT IS SO ORDERED.</u>

6    Dated:    **August 14, 2006**                                                    **/s/ Theresa A. Goldner**
     **j6eb3d**                                                                UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28